IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LAMBDA NU ASSOCIATION OF PHI GAMMA DELTA, INC., and THE LAMBDA NU CHAPTER OF THE PHI GAMMA DELTA FRATERNITY,<br><br>                    Plaintiffs,<br><br>      vs.<br><br>RONNIE D. GREEN, in his Individual and Official Capacities, and ANDREA BAREFIELD, in her Individual and Official Capacities,<br><br>                    Defendants. | Case No.<br><br><br>**COMPLAINT<br>AND JURY DEMAND** |

COMES NOW Plaintiffs Lambda Nu Association of Phi Gamma Delta, Inc. (the "Housing Corporation"), and the Lambda Nu Chapter of the Phi Gamma Delta Fraternity (the "Chapter" or "Fiji") (together, the "Fiji Plaintiffs"), and for their claims for relief against Defendant Ronnie D. Green, in his Individual and Official Capacities, and Andrea Barefield, in her Individual and Official Capacities, state and allege as follows:

## NATURE OF THE CASE

1.      This is a civil action against Chancellor of the University of Nebraska – Lincoln (the "University"), Ronnie D. Green, in his Individual and Official Capacities ("Chancellor Green"), and Director of Student Conduct and Community Standards, Andrea Barefield, in her Individual and Official Capacities ("Director Barefield") (together, "Defendants"), for their violations of the Fiji Plaintiffs' constitutional right to freedom of speech, freedom of association, and the right to procedural due process, based on Chancellor Green and Director Barefield's statements, investigations, and actions taken against the Fiji Plaintiffs.

2.      On or about January 21, 2017, a "Women's March" took place in locations across the United States, including in Lincoln, Nebraska.  The event took place following the presidential inauguration of former President Donald Trump.  In fact, the Women's March was, in part, a demonstration in opposition to then-President Trump.  On or about the same time, members of the Chapter who were students at the University displayed Trump election signs and celebrated the presidential inauguration on the Fiji's Plaintiffs' property.

3.      In the years following January 21, 2017, Chancellor Green, the late-Vice Chancellor for Student Affairs, Juan Franco ("Vice Chancellor Franco"), and later, Director Barefield engaged in a pattern of retaliatory conduct based on the Chapter and its members' political viewpoints and political speech.  Defendants and Vice Chancellor Franco's retaliatory conduct included:

   a.   Investigating the Chapter and its members;

   b.   Suspending the Chapter;

   c.   Making false and misleading public statements regarding the basis for the Chapter's suspensions;

   d.   Failing to follow the University's Student Code of Conduct;

   e.   Failing to follow the University's Title IX policy regarding amnesty for alcohol violations if a student organization cooperates with an investigation;

   f.   Enhancing punishments against the Chapter on the basis that it was "a bad fraternity," in reference to the expressive political speech by the Chapter's members around the time of the 2017 Women's March;

   g.   Making stigmatizing public statements insinuating the Chapter and its members were guilty of sexual assault;

h. Insinuating the Chapter's violations of the University's alcohol policy were related to sexual assault or were in fact violations of the University's policy regarding sexual misconduct, which they were not;

i. Depriving the Chapter and its members of their ability to associate as a recognized student organization; and

j. Depriving the Housing Corporation and the Chapter of its goodwill and reputation without due process.

4. A claim that one committed sexual assault is not equivalent to a claim that one violated the University's alcohol policies. The Chapter, its members, and the Housing Corporation condemn sexual assault and, in fact, following highly publicized allegations in the fall of 2021, reached out to the University Police Department ("UNLPD") in order to assist with its investigation. Thereafter, the evidence gathered from this cooperation was used to charge the Chapter with violations of the University's alcohol policy in direct contravention of the University's Title IX policy.

5. The Fiji Plaintiffs have been subjected to unrelenting attention from the national media and unsubstantiated social media rumors that have been perpetuated by Chancellor Green and Director Barefield's retaliatory actions and misleading public statements.

6. The Fiji Plaintiffs have suffered actual harm and seek injunctive, declaratory, prospective, compensatory, and punitive damages available under 42 U.S.C. § 1983 for Chancellor Green and Director Barefield's retaliatory conduct against the Fiji Plaintiffs for exercising their First Amendment right to Free Speech, for violating their right to Freedom of Association, and for violating their right to Procedural Due Process.

7.      The Chapter's members that were subjected to Chancellor Green's retaliatory actions after the Women's March were between the ages of 18 and 22.

8.      The statute of limitations is tolled, in part, due to the Chapter's members' ages or minor status, and Defendants are otherwise equitably estopped from asserting the statute of limitations as a defense to the Fiji Plaintiffs' allegations, which date back to at least to the Women's March.

## PARTIES

9.       The Housing Corporation is a business entity incorporated pursuant to the laws of the state of Nebraska and is primarily engaged in the business of managing the operations and membership of the Chapter at the University, and providing student housing for its members at Fiji's Chapter House ("Chapter House").

10.     The Chapter is a fraternal organization whose membership is made up of the students at the University.  Once a student graduates from the University, he becomes an alumni member.  Membership in the Chapter extends beyond the years of undergraduate education.

11.     The Chapter and its members engage in expressive activities that are protected under the First Amendment, applicable to States under the Fourteenth Amendment, including, but not limited to:

   a.  Semesterly fundraisers in which all the Chapter's members are required to participate;

   b.  Activities that are intended to instill its core values into collegiate men: friendship, knowledge, service, morality, and excellence; and

   c.  Expressive conduct, including but not limited to political speech in support of then-President Trump on January 21, 2017, following his inauguration.

4

12.     The Chapter has standing to bring this action based on injuries it suffered itself, as well as injuries suffered by its members, who are or were students at the University at any time between January 21, 2017 until present.

13.     Ronnie D. Green, in his Individual Capacity, is a person that resides within the state of Nebraska.

14.     Ronnie D. Green, in his Official Capacity, is employed as the Chancellor of the University, a position where he serves as the University's chief executive officer and oversees, directs, and supervises all subordinate University employees.

15.     Andrea Barefield, in her Individual Capacity, is a person that resides within the state of Nebraska.

16.     Andrea Barefield, in her Official Capacity, is employed as the Director of Conduct and Community Standards for the University.  As Director of Conduct and Community Standards for the University, Barefield, among other duties, oversees the University's enforcement of its Student Code of Conduct with respect to student organizations such as the Chapter.

## JURISDICTION AND VENUE

17.     Jurisdiction of this action is based on 28 U.S.C. § 1331 as it is brought pursuant to the 42 U.S.C. § 1983, 28 U.S.C. § 1343(a)(3), and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a) and § 2202.

18.     Defendants are residents of the State in which this district is located and a substantial part of the events or omissions giving rise to the claims occurred in the State in which this districted is located, therefore venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

**FACTUAL BACKGROUND**

**The 2017 Women's March**

19.     On January 21, 2017 in Lincoln, Nebraska, approximately 3,000 to 4,000 people participated in the Lincoln Women's March ("Women's March"), an event at which demonstrators marched from the Student Union at the University's city campus to Nebraska's Capitol building—a route that traveled past the Chapter House.  The Women's March's purpose, in part, was to express solidarity in opposition to then-President Donald Trump, who was inaugurated the prior day, January 20, 2017.

20.     Prior to the Women's March, members of the Chapter decorated the Chapter House with signs expressing the members' support for then-President Trump.  During the Women's March, members of the Chapter conducted their own political demonstration on the Chapter House's front lawn.  During this demonstration, these members chanted various slogans associated with then-President Trump, including "Trump, Trump, Trump."  Other individuals in the vicinity may have also chanted certain phrases that were later attributed to the Chapter and its members without substantiation.

21.     Later that day, participants from the Women's March contacted Chancellor Green and other University officials and demanded that the University investigate the Chapter for violating the University's Title IX policies in connection with the Chapter's members' demonstration in support of then-President Trump.  The participants' complaints centered on unsubstantiated rumors that had circulated via social media, which accused Fiji members of chanting various other slogans associated with then-President Trump.

22.    In connection with the Women's March participants' complaints regarding the Chapter's members' political demonstration, the University—at the direction of, with the participation of, or through acquiescence by Chancellor Green and other University employees—initiated a Title IX investigation into the Chapter. Whether this investigation was prompted by the various slogans the Chapter's members agree they chanted as set forth in paragraph 20, or was prompted by the slogans the Chapter's members were accused of chanting based on unsubstantiated social media rumors as set forth in paragraph 21, the investigation was undertaken in retaliation to the Chapter's members' political speech in support of then-President Trump.

23.    On January 26, 2017, Tami Strickman, the University's Title IX Coordinator and assistant to Chancellor Green, informed the Fiji Plaintiffs the University was initiating a Title IX investigation into the Chapter.

24.    On January 31, 2017, representatives of Fiji's International Headquarters and of the Housing Corporation attended a meeting with Vice Chancellor Franco, Dean of Students Matt Hecker, Head of Greek Affairs Linda Schwartzkopf, and Tami Strickman. At the beginning of the meeting, Vice Chancellor Franco informed the Housing Corporation representatives and International Headquarters representatives he *had already decided* the Chapter should be suspended for between 3 and 4 years, based on the Chapter's members' speech during the Women's March.

25.    On February 7, 2017, the University issued a press release stating:

On Tuesday, Feb. 7, 2017, the University of Nebraska-Lincoln placed its chapter of Phi Gamma Delta fraternity on interim suspension as an investigation into a pattern of behavior within the chapter continues.

Juan N. Franco, vice chancellor for student affairs at Nebraska, issued the following statement:

7

> "While behavior outside the fraternity during the Women's March attracted public attention, our investigation has shown broader conduct issues at the fraternity. This conduct required our immediate action, even while our investigation continues."

26.     On March 21, 2017, the University, Fiji's International Headquarters, and the Housing Corporation entered into a Chapter Rehabilitation Plan (the "Rehabilitation Plan") to address the Chapter's disputes with the University.  The Rehabilitation Plan announced, in its introduction, the circumstances that preceded its execution:

> It is understood that of primary concern to the chapter are hazing, parties/social gatherings hosted off-campus, with alcoholic beverages being provided to minors, occurring at locations other than establishments properly licensed to sell and serve alcoholic beverages.  These parties are informal and unofficial in nature, that is, they are planned outside of the formal event planning structure of the chapter.  As such, by design they are not in compliance with the risk management strategies of the fraternity.  Therefore, the chapter will educate its members on the Fraternity's Risk Management Policy (RMP), will inform members that these types of events are violations of the RMP, and will discipline any members who plan or participate in such events.

Absent from this statement is any mention of the Women's March or allegedly pending Title IX investigation.

27.     Also on March 21, 2017, the University issued a press release that conveyed a different message.  The release, in relevant part, represented that:

> The University of Nebraska-Lincoln has suspended its chapter of Phi Gamma Delta fraternity until May 2020, Vice Chancellor for Student Affairs Juan N. Franco said today.

> The suspension follows a university investigation that uncovered a pattern of behavior and a series of instances within the fraternity in violation of the Student Code of Conduct, Franco said. The behavior included reckless alcohol use, hazing and inappropriate sexually based behavior, including a pattern of sexually harassing conduct.

> The conduct occurred in multiple incidents at various points in time over the course of recent academic terms. While not the focal point of the suspension, comments made by Fiji members Jan. 21 outside the fraternity house during a

women's march were consistent with the pattern of sexually harassing conduct evident in multiple other incidents.

The University's statement regarding the Chapter's "inappropriate sexually based behavior, including a pattern of sexually harassing conduct," misrepresented that the Rehabilitation Plan only contemplated Fiji's alleged alcohol policy violations.  "Inappropriate sexually based behavior" and "sexually harassing conduct" are charges that involve moral turpitude and depravity, and are not equivalent or comparable to violations of the University's alcohol policy.

28.     As announced on March 21, 2017, the suspension was to last until May 2020. The University claimed it rescinded the Chapter's suspension in the spring semester of 2019. But the University's retaliation against the Chapter continued beyond that date.

**Spring Semester 2021**

29.     By January 1, 2021, the Chapter believed itself to be a fully-recognized student organization at the University, not under any University-imposed suspension, probation, or other disciplinary supervision.

30.     On February 17, 2021, the Fiji Plaintiffs received a notice from the University stating that UNLPD responded to the Chapter House on January 23, 2021.  The notice claimed the University possessed information that the Chapter violated the Student Code of Conduct by:

- Possessing or consuming alcoholic beverages while under the age of twenty-one (21), except when expressly permitted by law.

- Making alcoholic beverages available on premises that the students control when they know that underage individuals are likely to be present, the beverages are left in a place easily accessible to underage individuals, and some or all of the beverages are consumed by underage individuals.

- Failing to Comply with any University or Campus Policy, Rule or Regulation: Violation of any University policy, rule, or regulation published in hard copy or available electronically on any University website. Electronic copy published on any University website shall supersede hard copy. Specifically: UNL COVID-19 face covering, social

distancing, and gathering guidelines found in the Cornhusker Commitment and at https://covid19.unl.edu/.

31.     A Chapter undergraduate representative, the Chapter's attorneys, and a representative from Fiji's International Headquarters attended a hearing via Zoom with a representative of the University's Student Conduct Office on March 5, 2021.  At the hearing, the Student Conduct Office representative, who at all times was working at the direction of Director Barefield, relayed that a UNLPD officer claimed to have witnessed, through a basement egress window, Chapter members listening to loud music and drinking alcohol.

32.     After the March 5, 2021 informal hearing, the Student Conduct Office representative asked the representative of Fiji's International Headquarters to stay on the Zoom call after the Chapter's undergraduate representative and the Chapter's attorneys signed off.

33.      Soon after the March 5, 2021 informal hearing, the Chapter's attorneys met with the Fiji International Headquarters representative that stayed on the Zoom call.  During that meeting, Fiji's International Headquarters representative relayed that the University's representative stated the University would likely levy a sanction that would place the Chapter on a "probation" lasting through the end of the Spring 2021 semester.

34.     The following week, the University's Student Conduct Office representative again contacted the same Fiji International Headquarters representative.  At that time, the University representative stated he spoke with his supervisor, who told him the Chapter was "a bad fraternity," citing events associated with the 2017 Women's March, and therefore the Chapter's punishment should be enhanced.

35.     On March 10, 2021, the Chapter received the University's proposed administrative resolution to its investigation of the alleged January 23, 2021 party.  The proposed administrative resolution, which was an attempt at negotiating a settlement of the charges, asked

10

the Chapter to accept a punishment that placed the Chapter on probation through December 18, 2021.  The Chapter declined the proposed administrative resolution and proceeded to a formal hearing with the University.

36.     Prior to the hearing, the Chapter inspected the evidence the University intended to present against the Chapter.  The evidence consisted of the testimony of two UNLPD officers and bodycam footage recorded by only one of the two officers.  The Student Conduct Office informed the Chapter that the other officer must have forgotten to turn on his bodycam.

37.     In sum, the bodycam footage shows an officer knocking on the Chapter House's front door.  After no one answered his knock, the officer walked to the side of the Chapter House and lowered his body into a basement egress window.  The footage does not show that anyone inside the Chapter House was drinking.  Further, the officer responded to members of a neighboring fraternity house closing their windows by yelling "yeah, close that window, f------d----- bags."

38.     The formal hearing took place on May 27, 2021.  At the hearing, the University's primary evidence derived from the UNLPD officer that recorded the bodycam footage.  He testified that his bodycam footage did not show that any alcohol was consumed at the Chapter House on January 23, 2021.  Instead, he claimed he personally witnessed alcohol in the room.  He also said he was able to infer, based on his training and experience, that alcohol was being consumed.

39.     On June 2, 2021, the Chapter received a letter formally announcing the University's decision.  The letter stated the Chapter had violated the University's Student Code of Conduct by:

- Possessing or consuming alcoholic beverages while under the age of twenty-one (21), except when expressly permitted by law.

- Making alcoholic beverages available on premises that the students control when they know that underage individuals are likely to be present, the beverages are left in a place easily accessible to underage individuals, and some or all of the beverages are consumed by underage individuals.

- Failing to Comply with any University or Campus Policy, Rule or Regulation: Violation of any University policy, rule, or regulation published in hard copy or available electronically on any University website. Electronic copy published on any University website shall supersede hard copy. Specifically: UNL COVID-19 face covering, social distancing, and gathering guidelines found in the Cornhusker Commitment and at https://covid19.unl.edu/.

The letter stated the Chapter was thereafter placed on a probationary period until December 18, 2021, a period extending to the exact date contemplated by the proposed administrative resolution.  This proposed administrative resolution, as discussed above, was enhanced by the Student Conduct Office because the Office thought the Chapter was a "bad fraternity" due to its members' demonstration at the Women's March.

### Fall Semester 2021

40.    In the early morning hours of August 24, 2021, rumors began circulating on social media that stated, among other things, that a female University freshman was sexually assaulted at the Chapter House.  The Fiji Plaintiffs are unaware of who initiated these rumors.  To the Fiji Plaintiffs' knowledge, these rumors are untrue.

41.    Later on August 24, 2021, UNLPD posted on its public-facing website that it was investigating a "SEX OFFENSE-RAPE" that allegedly occurred at the Chapter House.

42.    On the night of August 24, 2021, hundreds of demonstrators, propelled by unsubstantiated and in some cases completely false rumors circulating on social media, gathered in front of the Chapter House.  Demonstrators leveled specific threats—including death threats—

at the Chapter's members based on the demonstrators' belief in the unverified rumors. These

demonstrations continued for multiple nights.

43.    On August 25, 2021, Chancellor Green stated on Twitter, in part:

We take any allegation of sexual assault very seriously, and the UNL Police
Department began investigating this incident as soon as the report came in. That
investigation remains open and is ongoing.

The Phi Gamma Delta fraternity at UNL is currently under probation for previous
violations of university policy. We are closing the fraternity house and suspending
operations of the Fiji chapter while this investigation is ongoing, due to potential
violations of that probation. This is the responsible action to take for everyone
involved.

Chancellor Green's statement withheld the fact that the Chapter's prior probation had nothing to

do with sexual misconduct.

44.    On August 26, 2021, Chancellor Green made another statement which provided,

in relevant part:

Sexual assault is heinous and should never happen. I wish we lived in a world
where it didn't.

We have taken a number of steps on our campus to prevent sexual assault, to help
ensure victims feel comfortable coming forward, to support survivors and to
investigate and address allegations of sexual misconduct.

This week, sexual assaults were reported to our UNL Police Department. And
they immediately began investigating each of them. My heart breaks at the
thought of any young person facing that trauma at the beginning of their
collegiate experience, or at any time they are a member of our UNL family.

I know that our UNL Police Chief, Hassan Ramzah, also takes this very seriously
and uses a trauma-informed approach in working with the victims and thoroughly
investigating each case as he's doing right now.

We all wish that resolution of these cases could come swiftly. But often, it's not
as simple as "locking them up." The guarantee of due process is part of our
Constitution and core to who we are as Americans.

Our law enforcement officials, our Title IX officials, are bound by clear legal
guidance and process. As a university, we have a responsibility to follow that

defined process and protect the rights of all involved — even while we move as quickly as we can.

**And I know that the end of that legal process sometimes just doesn't feel like justice. I get that. I understand many of you are angry. I'm angry too.**

We will always work harder and to do better to help prevent sexual assault. And I hope all of you will as well. If you see something, say something. Stick together. Be safe. Take care of one another.

And if you're a young man who somehow thinks this is cool — think again. It is unacceptable. No means no. And if you violate that, and we can prove it — you have no place on our campus.

(emphasis added.)

45.     Immediately after UNLPD announced its investigation, undergraduate members of the Chapter reached out to UNLPD to assist with its investigation into the alleged sexual assault.  The members invited UNLPD to the house to conduct interviews and collect evidence. Only after this invitation did any UNLPD officers actually visit the Chapter House for the purpose of investigating the allegations of sexual assault.

46.     The Chapter members' parents, upset with the threats their sons were receiving at the hands of their fellow University students, reached out to various levels of the University's administration, including to Chancellor Green.  The parents requested a meeting with Chancellor Green to discuss their sons' safety.  The only message they received in return was that if Chancellor Green met with the parents, there would have to be lawyers present.

47.     On August 25, 2021, Leigh Thiedeman, the University's Director of Fraternity & Sorority Life, sent an email to parents of the Chapter's members.  The email stated, in part:

Dear parents and family members of Phi Gamma Delta:

The Phi Gamma Delta (Fiji) fraternity at UNL has been temporarily suspended for violations of university policy. In cooperation with the local Housing Corporation and the national Phi Gamma Delta organization, the fraternity house will close

14

Sunday, August 29, 2021, and chapter operations will be suspended during the ongoing investigation.

This statement, that the University had received the Housing Corporation and Fiji's International Headquarters' approval to close the Chapter, was untrue.

48.    On August 31, 2021, the Chapter received a notice from the University's Student Conduct Office stating it received a report from UNLPD regarding an incident occurring on or about August 23, 2021 at the Chapter House in which underage individuals had access to and consumed alcohol during a party.  The notice stated the University suspected the Chapter had violated the following provisions of the University's Student Code of Conduct:

- Misuse of Alcoholic Beverages, which includes, but is not limited to:

    o Using, possessing, or providing alcoholic beverages on campus without University authorization.

- Misuse of Alcoholic Beverages, which includes, but is not limited to:

    o Possessing or consuming alcoholic beverages while under the age of twenty-one (21), except when expressly permitted by law.

- Providing Alcoholic Beverages to Underage Students at Off-Campus Parties and Events

    o Providing alcoholic beverages to underage individuals.

- Providing Alcoholic Beverages to Underage Students at Off-Campus Parties and Events, which includes, but is not limited to:

    o Making alcoholic beverages available on premises that the students control when they know that underage individuals are likely to be present, the beverages are left in a place easily accessible to underage individuals, and some or all of the beverages are consumed by underage individuals.

- Engaging in, or attempting to engage in, behavior that may cause harm to an individual or property

- Failing to Comply with any University or Campus Policy, Rule or Regulation: Violation of any University policy, rule, or regulation

published in hard copy or available electronically on any University website. Electronic copy published on any University website shall supersede hard copy.

- Abuse of University Disciplinary Proceedings, which includes but is not limited to:

    o Failing to comply with the University response(s) imposed under the Student Code.

The notice stated the University would adjudicate these charges via a formal hearing.  The notice did not include any allegation regarding sexual misconduct.

49.    The formal hearing, led by Director Barefield, took place on September 17, 2021. The University's primary evidence at the hearing derived from the testimony of UNLPD officers that responded to reports of a party at the Chapter House on the night of August 23, 2021.  The officers testified they interviewed numerous individuals—both members of the Chapter and unaffiliated students.  The officers' testimony described a party that took place off campus (one that was co-hosted between the Chapter and another fraternity), and a subsequent party that took place at the Chapter House.  Much of this testimony derived from UNLPD interviews with members of the Chapter that only occurred as a result of the Chapter's members' invite that UNLPD come to the Chapter House to investigate the alleged sexual assault.  The officers testified that many of the individuals they interviewed expressed that they also attended other fraternity parties that night.

50.    At the hearing, the University's Conduct Board announced its finding that the Chapter was guilty of all charges except one: Engaging in, or attempting to engage in, behavior that may cause harm to an individual or property.  Regarding that charge, the Conduct Board stated the University presented no evidence that the Chapters or its members engaged or

attempted to engage in any conduct that night that posed the danger of causing harm to individuals or property.

51.     On September 22, 2021, the Chapter received a letter formally announcing the Conduct Board's decision. The letter stated the Chapter had violated the University's Student Code of Conduct by its:

- Misuse of Alcoholic Beverages, which includes, but is not limited to:

    o   Using, possessing, or providing alcoholic beverages on campus without University authorization.

- Misuse of Alcoholic Beverages, which includes, but is not limited to:

    o   Possessing or consuming alcoholic beverages while under the age of twenty-one (21), except when expressly permitted by law.

- Providing Alcoholic Beverages to Underage Students at Off-Campus Parties and Events

- Providing alcoholic beverages to underage individuals.

- Providing Alcoholic Beverages to Underage Students at Off-Campus Parties and Events, which includes, but is not limited to:

    o   Making alcoholic beverages available on premises that the students control when they know that underage individuals are likely to be present, the beverages are left in a place easily accessible to underage individuals, and some or all of the beverages are consumed by underage individuals.

- Failing to Comply with any University or Campus Policy, Rule or Regulation: Violation of any University policy, rule, or regulation published in hard copy or available electronically on any University website. Electronic copy published on any University website shall supersede hard copy.

- Abuse of University Disciplinary Proceedings, which includes but is not limited to:

    o   Failing to comply with the University response(s) imposed under the Student Code.

52.     On October 12, 2021, Chancellor Green released the following announcement:

Lincoln, Nebraska, Oct. 12, 2021 — On Aug. 25, Chancellor Ronnie Green announced the temporary suspension of the Phi Gamma Delta (Fiji) fraternity, pending an investigation into violations of an existing probation. The University Conduct Board determined that violations of the Student Code of Conduct did occur and has suspended the Fiji fraternity through 2026. During this time, the fraternity is no longer recognized by the university.

The fraternity house at 1425 R St. is private property and is not under university control. Any private use of the building is determined by the Phi Gamma Delta housing corporation.

A separate criminal investigation by the University Police Department into the reported sexual assault is open and ongoing.

In UNL's continuing efforts to prevent sexual misconduct and to support victims, two weeks ago Chancellor Green announced [news.unl.edu] a permanent Chancellor's Commission for the Prevention of Sexual Misconduct, building on the work of the campus-wide Collaborative in 2019.

The university has also committed to [news.unl.edu] additional staffing and support for the Center for Advocacy, Response and Education (CARE); creating a director of education on sexual misconduct; improving mandatory training for students, faculty and staff; and repurposing Neihardt Hall into a one-stop resource that includes new, more accessible facilities for student advocacy and support services.

53.     Chancellor Green's statement did not specify the charges for which the University suspended the Chapter, nor did it mention that the Student Conduct Board found the University failed to demonstrate the Chapter engaged in or attempted to engage in behavior that posed a danger to individuals or property.  Moreover, despite other fraternities' involvement with the events of August 23, 2021 and violations of the University's alcohol policies, Chancellor Green did not make any public statements on disciplinary measures taken by the University against those fraternities, nor did he publicly insinuate they were involved in an alleged sexual assault.

54.     To the Fiji Plaintiffs' knowledge, no one has been charged criminally or under the University's Student Code of Conduct with a sexual assault in connection with the alleged August 23, 2021 party.

55.     To the Fiji Plaintiffs' knowledge, since UNLPD took interviews of the Chapter's members at their invitation, UNLPD has not contacted the Chapter or the Housing Corporation's leadership in connection with any ongoing criminal investigation.

56.     To the Fiji Plaintiffs' knowledge, the University's Title IX Office has not contacted the Chapter or the Housing Corporation's leadership in connection with any ongoing Title IX investigation.

**Chancellor Green's Supervisory Role**

57.     At all times relevant to the preceding paragraphs' statements, Chancellor Green served as the University's Chancellor—its chief executive officer—and Vice Chancellor Franco and Director Barefield served as his subordinates.

58.     During the times relevant to this action, Chancellor Green directed or was aware of Vice Chancellor Franco and Director Barefield's actions taken against the Chapter, dating back at least to the Women's March.

59.     Chancellor Green, through his interactions with the Fiji Plaintiffs since the Women's March, was placed on notice of his subordinates' unconstitutional retaliation against the Chapter for its members' constitutionally-protected political speech.

60.     Chancellor Green's notice of this unconstitutional conduct includes but is not limited to conversations, letters, and emails he exchanged with representatives of the Fiji Plaintiffs since the Women's March, in which the Fiji Plaintiff representatives protested the University's retaliation against the Chapter.

19

61.     Moreover, emails obtained by the Housing Corporation in connection with a public records request pursuant to Neb. Rev. Stat. §§ 84-712 through 84-712.09 demonstrate that Chancellor Green had notice of this unconstitutional conduct because he was in close contact with and directing the actions of his subordinates, including Vice Chancellor Franco, when the University decided to investigate and prepared its retaliation against the Chapter immediately after the Women's March.

62.     Chancellor Green and his leadership promulgated an official policy or unofficial custom by which the Chapter, for engaging in constitutionally-protected political speech, was known to be a "bad fraternity," and subject to enhanced penalties based on that status.

63.     Chancellor Green failed to adequately train or supervise his subordinates in a manner sufficiently calculated to prevent them from violating the Chapter's constitutional rights. Specifically, the manner in which Chancellor Green's subordinates were trained caused them to believe it to be proper that a student organization, such as the Chapter, could or should be subject to continued punishment for engaging in constitutionally-protected political speech.

**Director Barefield's Supervisory Role**

64.     At all times relevant to the preceding paragraphs' statements, Director Barefield served as the University's Director of Student Conduct and Community Standards.

65.     During the times relevant to this action, Director Barefield directed or was aware of her subordinates' actions taken against the Chapter, dating back at least to the Spring Semester of 2021.

66.     Director Barefield, through her interactions with the Fiji Plaintiffs during these times, was placed on notice of her subordinates' unconstitutional retaliation against the Chapter for its constitutionally-protected political speech.

20

67.     Director Barefield's notice of this unconstitutional conduct includes but is not limited to conversations, letters, and emails she exchanged with representatives of the Fiji Plaintiffs, in which the Fiji Plaintiff representatives protested the University's retaliation against the Chapter.

68.     Director Barefield's leadership within the Office of Student Conduct and Community Standards promulgated an official policy or unofficial custom by which the Chapter, for engaging in constitutionally-protected political speech, was known to be a "bad fraternity," and subject to enhanced penalties based on that status.

69.     Director Barefield failed to adequately train or supervise her subordinates in a manner sufficiently calculated to prevent them from violating the Chapter's constitutional rights. Specifically, the manner in which Director Barefield's subordinates were trained caused them to believe it to be proper that a student organization, such as the Chapter, could or should be subject to continued punishment for engaging in constitutionally-protected political speech.

## CLAIM I

### 42 U.S.C. 1983

### Violation of First Amendment Right to Freedom of Speech

### (The Chapter against Chancellor Green and Director Barefield in their Individual and Official Capacities)

70.     Plaintiffs incorporate the preceding paragraphs as if fully set forth below.

71.     Acting as University officials, and therefore under color of state law, Chancellor Green and Director Barefield violated the Chapter and its members' clearly established constitutional right to freedom of speech.

72.     Both the political speech that took place in the Women's March as well as the political speech by the Chapter's members is protected by the First Amendment.  However, only

those associated with the Chapter were punished for their political speech due to Chancellor Green, Vice Chancellor Franco, and their subordinates favoring the political speech associated with the Women's March and disfavoring the Chapter's members' speech in support of then-President Trump.

73.     The Chapter's members' political speech on or around January 21, 2017 played a part or a role in Chancellor Green and Vice Chancellor Franco's decision to "investigate" the Chapter and its members.

74.     In March 2017, Chancellor Green and Vice Chancellor Franco further retaliated against the Chapter by declaring that the Chapter was suspended until May 2020 following a University "investigation" that concluded the Chapter had engaged in "a pattern of behavior in violation of the Student Code of Conduct."  These alleged "violations" found by the University were pretext for unconstitutional viewpoint-based discrimination.

75.     The Chapter's political speech on or around January 21, 2017 played a part or a role in the Chancellor Green and Director Barefield's decision to revoke its recognition of the Chapter as a student organization in October 2021.  Specifically, had the Chapter's punishment not been enhanced in the manner described in paragraphs 34 through 39, the Chapter would not have been on probation in the Fall semester of 2021, and therefore the University would have no basis to enact the 5 year suspension, discussed above.

76.     Chancellor Green, Vice Chancellor Franco, and Director Barefield's actions, as well as their policies, practices, and/or customs, on their face and as applied to the Chapter, violate and violated the Free Speech Clause of the First Amendment to the Constitution of the United States as applied to the States through the Fourteenth Amendment, and unlawfully chill, deter and restrict, and chilled, deterred and restricted the Chapter's protected speech rights.

77.     Chancellor Green, Vice Chancellor Franco, and Director Barefield's actions were motivated by malicious motive or intent; or were made with reckless indifference to the rights of the Chapter.

78.     Chancellor Green had actual knowledge of Vice Chancellor Franco and Director Barefield's violations of the Chapter's rights and Chancellor Green directed, participated in, or acquiesced in those violations.

79.     Chancellor Green, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violation of the Chapter's rights by Vice Chancellor Franco and Director Barefield.

80.     As a direct result of Chancellor Green, Vice Chancellor Franco, and Director Barefield's violations of the Chapter's First Amendment right to the freedom of speech, the Chapter has suffered harm and is entitled to recover injunctive, prospective, compensatory, nominal, and punitive damages, as well as attorney's fees and costs for bringing this action to enforce its constitutional rights, in an amount to be determined at trial.

## CLAIM II

### 42 U.S.C. § 1983

**Violation of First Amendment Right to Freedom of Association**

**(The Chapter against Chancellor Green and Director Barefield in their Individual and Official Capacities)**

81.     Plaintiffs incorporate the preceding paragraphs as if fully set forth below.

82.     Acting as University officials, and therefore under color of state law, Chancellor Green and Director Barefield violated the Chapter's clearly established constitutional right to freedom of association.

83.     The Chapter engaged in expressive activities, discussed above, that are protected under the First Amendment, applicable to States under the Fourteenth Amendment.

84.     Chancellor Green and Director Barefield, in retaliation for the Chapters' members' exercise of their First Amendment right to the freedom of speech, infringed upon the Chapter's First Amendment right to freedom of association by depriving it of its status as a recognized organization, which is not supported by a rational, let alone compelling, government interest and the actions taken against the Chapter were not narrowly tailored or the least restrictive means to accomplish a compelling or permissible governmental interest.

85.     The Chapter's right to associate was impeded by Chancellor Green and Director Barefield's withdrawal of its official recognition as a student organization in the following manner:

   a.   The Chapter is no longer able to recruit new members through University's recruiting services;

   b.   The Chapter is no longer able to participate in homecoming activities as an organization;

   c.   The Chapter is no longer able to participate in intramurals as an organization;

   d.   The Chapter is no longer able to house freshman members in its fraternity house, and those freshman members are required to live in University Housing under the University's On-campus Residency Requirement, unless they meet another express exemption under the University's policy; and

   e.   The Chapter is no longer able to utilize the services available through the Office of Fraternity and Sorority Life.

86.     The Chapter has been precluded from associating as a student organization because Chancellor Green and Director Barefield determined Fiji had violated its probationary status by breaching the University's alcohol policies, a mere pretext for their retaliation against the Chapter's members' prior political speech.

87.     As stated above, the actions taken by Chancellor Green and Director Barefield were part of an ongoing effort to retaliate against and punish the Fiji Plaintiffs' for the Chapter's members' political speech in support of then-President Trump that occurred on or around January 21, 2017 following the presidential inauguration.

88.     The Chapter's members' political speech on or around January 21, 2017 played a part or a role in Chancellor Green and Director Barefield's decision to revoke its recognition of the Chapter as a student organization.

89.     Had the Chapter's punishment not been enhanced in the manner described in paragraphs 34 through 39, the Chapter would not have been on probation in the Fall semester of 2021, and therefore the University would have no basis to enact the 5 year suspension, discussed above.

90.     Chancellor Green and Director Barefield's actions were motivated by malicious motive or intent, or were made with reckless indifference to the rights of the Chapter and its members.

91.     As a direct result of Chancellor Green, Vice Chancellor Franco, and Director Barefield's violations of the Chapter's First Amendment right to the freedom of association, the Chapter has suffered harm and is entitled to recover injunctive, prospective, compensatory, nominal, and punitive damages, as well as attorney's fees and costs for bringing this action to enforce its constitutional rights, in an amount to be determined at trial.

## CLAIM III

### 42 U.S.C. § 1983

### Violation of the Fourteenth Amendment with Respect to the Deprivation of Property and Liberty Rights without Due Process

### (The Housing Corporation against Chancellor Green in his Individual Capacity)

92.     Plaintiffs incorporate the preceding paragraphs as if fully set forth below.

93.     Acting as a University official, and therefore under color of state law, Chancellor Green deprived the Housing Corporation of its clearly established constitutional right to procedural due process.

94.     Chancellor Green deprived the Housing Corporation of its property interest in its goodwill and damaged the Housing Corporation's good name, reputation, and honor, by the publishing of stigmatizing statements insinuating that crimes of moral turpitude had occurred at Fiji's house without providing the Housing Corporation the opportunity to clear its good name.

95.     Chancellor Green made stigmatizing statements that insinuated the Fiji Plaintiffs were guilty of and/or being investigated for and/or had been punished based on sexual assault charges rather than violations of the University's alcohol policy.

96.     Sexual assault is a crime of moral turpitude and depravity.  Sexual assault is not equivalent or comparable to a violation of the University's alcohol policy.

97.     Chancellor Green's actions deprived the Housing Corporation of its goodwill, a recognized property interest in Nebraska, and damaged the Housing Corporation by publishing the foregoing stigmatizing statements without providing the Housing Corporation due process.

98.     Chancellor Green denied the Housing Corporation the opportunity to demonstrate its innocence or lack of wrongdoing before Chancellor Green irreparably damaged its goodwill and reputation.

26

99.     Chancellor Green's actions were motivated by malicious motive or intent; or were made with reckless indifference to the rights of the Housing Corporation.

100.    The Housing Corporation was also damaged by Chancellor Green's actions because students associated with the Chapter moved out of the house because of his stigmatizing statements and the damage to the Housing Corporation's goodwill in its operations and services.

101.    The Housing Corporation is entitled to compensatory damages for past and future harm, including past and future room and board payments, nominal damages, punitive damages, and attorney's fees and costs for bringing this action to enforce its constitutional rights, in an amount to be determined at trial.

## CLAIM IV

## 42 U.S.C. § 1983

**Violation of the Fourteenth Amendment with Respect to the Deprivation of Property and Liberty Rights without Due Process**

**(The Chapter against Chancellor Green in his Individual Capacity)**

102.    Plaintiffs incorporate the preceding paragraphs as if fully set forth below.

103.    Acting as a University official, and therefore under color of state law, Chancellor Green deprived the Chapter of its clearly established constitutional right to procedural due process.

104.    Chancellor Green deprived the Chapter of its property interest in its goodwill and damaged the Chapter's good name, reputation, and honor, by the publishing of stigmatizing statements insinuating that crimes of moral turpitude had been committed by the Chapter without providing the Chapter the opportunity to clear its good name.

105.     Chancellor Green made stigmatizing statements that insinuated the Chapter and its members were guilty of and/or being investigated for and/or had been punished based on sexual assault charges rather than violations of the University's alcohol policy.

106.     Sexual assault is a crime of moral turpitude and depravity.  Sexual assault is not equivalent or comparable to a violation of the University's alcohol policy.

107.     Chancellor Green deprived the Chapter of its goodwill, a recognized property interest in Nebraska, and damaged the good name, reputation and honor of the Chapter by publishing the foregoing stigmatizing statements without providing the Chapter due process.

108.     Chancellor Green denied the Chapter the opportunity to demonstrate its innocence or lack of wrongdoing before Chancellor Green irreparably damaged its goodwill and good name, reputation, and honor.

109.     Chancellor Green's actions were motivated by malicious motive or intent; or were made with reckless indifference to the rights of the Chapter.

110.     The Chapter was also damaged by Chancellor Green's actions because students associated with the Chapter moved out of the house, broke their room and board agreement and/or ceased paying their membership dues, because of Chancellor Green's stigmatizing statements and the damage to the Chapter's goodwill in its operations and services.

111.     The Chapter is entitled to compensatory damages for past and future harm, including past and future room and board payments and membership dues, nominal damages, punitive damages, and attorney's fees and costs for bringing this action to enforce its constitutional rights, in an amount to be determined at trial.

## CLAIM V

**Declaratory Judgment under the Federal Declaratory Judgment Act**

**(The Chapter and Housing Corporation against Chancellor Green and Director Barefield in Their Individual and Official Capacities)**

112.     Plaintiffs incorporate the preceding paragraphs as if fully set forth below.

113.     If Chancellor Green and Director Barefield continue to take actions in violation of the Fiji Plaintiffs' constitutional rights, the Fiji Plaintiffs will suffer immediate coercive consequences of the continuing violation and abuse of their constitutional rights.

114.     Declaratory judgment finding that Chancellor Green and Director Barefield have acted unlawfully and in violation of the Fiji Plaintiffs' constitutional rights will resolve the dispute between the parties and prevent future harm to the Fiji Plaintiffs.

115.     Chancellor Green and Director Barefield's unconstitutional actions justify the Court's provision of prospective injunctive relief.  Specifically, the Chapter's reinstatement as a recognized student organization at the University, as well as any other prospective injunctive relief the Court sees fit, will resolve the dispute between the parties and prevent future harm to the Fiji Plaintiffs.

116.      There is an actual controversy between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issue of a declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a) and § 2202.

## REQUEST FOR JURY TRIAL

117.     Plaintiffs request trial by jury on all claims so triable.

WHEREFORE, Lambda Nu Association of Phi Gamma Delta, Inc. and the Lambda Nu Chapter of the Phi Gamma Delta Fraternity requests the foregoing relief.

DATED this 18th day of February, 2022.

> LAMBDA NU ASSOCIATION OF PHI GAMMA DELTA, INC., and THE LAMBDA NU CHAPTER OF THE PHI GAMMA DELTA FRATERNITY, Plaintiffs,
>
> By: /s/Brian J. Brislen
> Brian J. Brislen, #22226
> LAMSON DUGAN & MURRAY LLP
> 10306 Regency Parkway Drive
> Omaha, NE 68114
> Tel: (402) 397-7300; Fax: (402) 397-7824
> bbrislen@ldmlaw.com